UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 15, 2020

SEAN F. McAVOY, CLERK

| | |
|---|---|
| BARBARA V., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 2:19-CV-0157-JTR <br><br> ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 12, 13. Attorney Christopher H. Dellert represents Barbara V. (Plaintiff); Special Assistant United States Attorney Alexis Toma represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

In September 2015, Plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits, alleging disability since October 12, 2013,[1] due to spinal stenosis; degenerative lumbar disks; arthritis throughout her back, shoulders, and neck; and ongoing complications post cholecystectomy. Tr. 204, 211, 245. The applications were denied initially and upon reconsideration.

---

[1] Plaintiff later amended her alleged onset date to August 31, 2015, the date she stopped working. Tr. 15, 43-44, 314.

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

Administrative Law Judge (ALJ) Larry Kennedy held a hearing on August 21, 2017, Tr. 37-76, and issued an unfavorable decision on March 5, 2018, Tr. 15-31. The Appeals Council denied Plaintiff's request for review on March 18, 2019. Tr. 1-6. The ALJ's March 2018 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on May 10, 2019. ECF No. 1.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on June 30, 1963, Tr. 204, and was 52 years old on the amended alleged disability onset date, August 31, 2015. She completed two years of college and has reported past work as a waitress, bartender and bar manager. Tr. 65-67, 246. Plaintiff's disability report indicates she stopped working on August 31, 2015, because of her condition. Tr. 245.

Plaintiff testified at the administrative hearing held on August 21, 2017, she lived in a home with her three grandchildren, ages 11, eight and three; had maintained custody over these children for the past four years; and, at that time, was in the process of adopting the children. Tr. 45-46. She stated that when the three-year-old was an infant, her daughter would help care for him during the day and part of the night because Plaintiff was still working. Tr. 51. However, at the time of the hearing, Plaintiff was the caregiver for the children. Tr. 53.

Plaintiff testified she was unable to work because she could not sit or stand for long periods of time due to pain and had stopped working because of the pain caused by sitting and standing. Tr. 54-55. Plaintiff described the pain as occurring in her back, traveling down her legs, and causing numbness in her feet. Tr. 56. It affected her ability to drive and walk (she reported she would sometimes stumble). Tr. 56. Plaintiff stated she had a valid driver's license and was capable of driving.

1  Tr. 46-47.  However, when driving longer distances, Plaintiff stated she needed to
2  stop frequently, for 10 to 15 minutes, to stretch her legs and use the restroom.  Tr.
3  47, 49.
4       Plaintiff indicated she was able to walk only about half a city block before
5  needing to rest at least 10 minutes.  Tr. 57.  She stated she could sit for about 20
6  minutes at a time (sometimes longer) and was able to lift approximately 10 pounds.
7  Tr. 57.  She testified her back pain limited her ability to bend and twist and
8  perform daily activities such as doing the laundry.  Tr. 61.
9       Plaintiff stated that in addition to her back pain, she experienced shoulder
10  pain, Tr. 58, neck pain, Tr. 62, and headaches, Tr. 62.  She also indicated issues
11  with dizziness, feeling light-headed or vertigo.  Tr. 63.
12       Plaintiff testified at the August 21, 2017 administrative hearing that she had
13  not been to a doctor, nor received any treatment, in the 10 months preceding the
14  hearing.  Tr. 42.

## STANDARD OF REVIEW

16       The ALJ is responsible for determining credibility, resolving conflicts in
17  medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035,
18  1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, with
19  deference to a reasonable interpretation of the applicable statutes.  *McNatt v. Apfel*,
20  201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed
21  only if it is not supported by substantial evidence or if it is based on legal error.
22  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is
23  defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at
24  1098.  Put another way, substantial evidence is such relevant evidence as a
25  reasonable mind might accept as adequate to support a conclusion.  *Richardson v.*
26  *Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one
27  rational interpretation, the Court may not substitute its judgment for that of the
28  ALJ.  *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*,

169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. § 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) the claimant can make an adjustment to other work; and (2) the claimant can perform specific jobs that exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (9th Cir. 2004). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On March 5, 2018, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the amended alleged onset date, August 31, 2015. Tr. 18.

At step two, the ALJ determined Plaintiff had the following severe impairments: cervical, thoracic, and lumbar spine degenerative disc

disease/spondylolisthesis/stenosis; bilateral knee degenerative joint disease; and obesity.  Tr. 18.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  Tr. 19.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined she could perform light work with the following limitations:  she could only occasionally stoop, kneel, and crouch and cannot climb, crawl, or balance; she could only frequently reach, handle, and finger; and she would need to avoid concentrated exposure to vibration, pulmonary irritants, heights, and hazards.  Tr. 20.

At step four, the ALJ determined Plaintiff was capable of performing her past relevant work as a bartender and manager, food service, as those jobs are generally performed in the national economy.  Tr. 28-29.

At step five, the ALJ found in the alternative that based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience and RFC, Plaintiff could perform other jobs present in significant numbers in the national economy, including the jobs of cafeteria attendant, information clerk, and office helper.  Tr. 30-31.  The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from August 31, 2015, through the date of the ALJ's decision, March 5, 2018.  Tr. 31.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff raises the following issues for the Court's review:  (1) whether the ALJ erred in finding Plaintiff's benign positional vertigo was not a severe impairment and not accommodating any limitations related to this impairment in

the residual functional capacity assessment; and (2) whether the ALJ erred in his consideration of Plaintiff's subjective allegations. ECF No. 12 at 2.

## DISCUSSION

**A.    Step Two**

Plaintiff contends the ALJ erred at step two by failing to find Plaintiff's vertigo was a severe impairment and by failing to accommodate any limitation resulting from vertigo into the RFC assessment. ECF No. 12 at 4.

Plaintiff has the burden of proving she has a severe impairment at step two of the sequential evaluation process. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 423(d)(1)(A), 416.912. In order to meet this burden, Plaintiff must furnish medical and other evidence that shows she has a severe impairment. 20 C.F.R. § 416.912(a). Step two is "a de minimis screening device [used] to dispose of groundless claims," *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), and an ALJ may find a claimant lacks a medically severe impairment or combination of impairments only when this conclusion is "clearly established by medical evidence." S.S.R. 85-28; *see Webb v. Barnhart*, 433 F.3d 683, 686-687 (9th Cir. 2005). Applying the normal standard of review to the requirements of step two, the Court must determine whether the ALJ had substantial evidence to find the medical evidence clearly established Plaintiff did not have a severe impairment. *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here."); *Webb*, 433 F.3d at 687.

As discussed by the ALJ, Tr. 18-19, while there are medical records documenting Plaintiff's vertigo complaints in 2016, Plaintiff displayed minimal symptoms and normal neurological findings upon examination, Tr. 404, 416, 418, 419, 420, except with respect to a face touch deficit, Tr. 404, and involuntary eye movement, Tr. 416. A CT scan and blood work were normal, Tr. 416, and a brain

1  MRI was unremarkable, Tr. 419, 429.  It was initially noted her dizziness improved
2  with meclizine and Valium, Tr. 420; however, Plaintiff later reported the
3  medications had not reduced her vertigo symptoms, Tr. 430.  On October 15, 2016,
4  John W. Roberts, M.D., at Virginia Mason Medical Center, explained that Plaintiff
5  appeared to have benign positional vertigo, which often self corrects, and that
6  vestibular rehabilitation could hasten her recovery.  Tr. 431.  She was prescribed
7  vestibular rehabilitation, hopefully with a physical therapist in her local
8  community, and a neurologic follow-up if her symptoms did not improve.  Tr. 431.
9  As indicated by the ALJ, Plaintiff did not seek any further treatment for vertigo,
10 either with rehabilitation or a neurologist.  Tr. 19.

11       The Court notes at the outset that Plaintiff did not assert vertigo as a medical
12 condition limiting her ability to work in her disability application, Tr. 245, and
13 Plaintiff only first alleged vertigo in October 2016, ECF No. 12 at 4, more than one
14 year after Plaintiff's August 31, 2015 alleged onset date.  Moreover, there is no
15 indication in the record that her alleged vertigo met the durational requirements of
16 the Social Security Act.  *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (an
17 individual shall be considered disabled if she has an impairment which can be
18 expected to result in death or which has lasted or can be expected to last for a
19 continuous period of not less than 12 months).  In any event, the Court finds the
20 ALJ correctly determined the record reflects essentially normal examination
21 findings and a lack of follow-up by Plaintiff, suggesting the alleged symptoms of
22 vertigo either improved or did not significantly limit her functioning.

23       Furthermore, even if the Court were to find the ALJ erred by concluding
24 vertigo was a non-severe impairment in this case, the ALJ specifically accounted
25 for vertigo symptoms in the ultimate RFC assessment by precluding Plaintiff from
26 work involving any climbing or balancing, as well as work requiring concentrated
27 exposure to hazards.  Tr. 19.  Thus, contrary to Plaintiff's argument, ECF No. 12 at
28 9-10; ECF No. 14 at 5, the ALJ considered the impact of Plaintiff's alleged vertigo

ORDER GRANTING DEFENDANT'S MOTION . . . - 7

1  at steps four and five of the sequential evaluation process. Any error the ALJ may
2  have made in failing to include this impairment at step two was harmless. *See*
3  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ's failure to include
4  impairment as severe at step two was harmless error where ALJ considered the
5  limitations posed by the impairment at step four); *Johnson v. Shalala,* 60 F.3d
6  1428, 1436 n. 9 (9th Cir. 1995) (an error is harmless when the correction of that
7  error would not alter the result); *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir.
8  2005) (an ALJ's decision will not be reversed for errors that are harmless).

**B.    Plaintiff's Symptom Testimony**

Plaintiff next contends the ALJ erred by failing to give specific, clear and convincing reasons for rejecting her symptom testimony. ECF No. 12 at 10-17; ECF No. 14 at 6-7.

It is the province of the ALJ to make credibility determinations. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical and other evidence of record. Tr. 21-22.

The ALJ first determined Plaintiff's overall record showed generally mild objective findings, inconsistent with her allegations. Tr. 22.

A lack of supporting objective medical evidence is a factor which may be considered in evaluating an individual's credibility, provided it is not the sole factor. *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991) (Once a claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject the claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain.); *Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 883 (9th Cir. 2006) (An ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence.").

The ALJ noted Plaintiff had a history of back pain that predated her alleged onset date. Tr. 22, 326-328. However, as indicated by the ALJ, contemporaneous physical examination findings showed normal gait in and around the exam room with normal stride and cadence; normal gross manual muscle strength testing in all four extremities; and normal dynamic strength for toe walk, heel walk, reverse squat and double-foot toe raise. Tr. 22, 332. A physical examination in March 2015 was likewise largely normal, with findings of full active motion at the bilateral upper and lower extremities with supple motion, as well as normal cervical and lumbar range of motion. Tr. 22, 337. Plaintiff had normal heel and toe walk bilaterally; normal tandem gait; largely intact sensory and motor function; and negative straight leg raising. Tr. 22, 337-338. It was noted in May 2015 that Plaintiff moved all extremities independently, had no gross gait abnormalities, and had only a mildly ataxic gait. Tr. 22, 342, 344.

Since the amended alleged onset date, Plaintiff reported neck pain with numbness in her fingers; however, a contemporaneous cervical spine MRI revealed only mild central canal stenosis at C5-C6 and C6-C7, and Plaintiff was noted to have only minimal disc bulge without significant central canal stenosis at C7-T1. Tr. 22, 394-395. An MRI of the thoracic spine showed ongoing degeneration, but normal alignment of the thoracic spine and signal intensities within the thoracic

spinal cord.  Tr. 22-23, 391-392.  In May 2016, Plaintiff was noted to be ambulating with a stiff spine and to have antalgia, but the antalgia was noted to be only mild in nature and, in contrast to earlier findings, she had no ataxia.  Tr. 23, 474.  In October 2016, Plaintiff presented at the Virginia Mason Medical Center for consultation and, upon examination, had diffuse tenderness throughout her paravertebral area in the low back, sacroiliac joints, sciatic notches, and greater trochanters, as well as range of motion about 50 percent of normal with slow, cautious gait.  Tr. 23, 427.  However, she had no pain on straight leg raising or Patrick maneuver, she was noted to have normal strength, and she was noted to display few, if any, radicular symptoms.  Tr. 23, 427-428.

State agency reviewing physician Mark Magdaleno, M.D., opined on September 29, 2015, that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for a total of about six hours in an eight-hour workday; and push and/or pull on an unlimited basis within the parameters set forth for lifting and/or carrying.  Tr. 25, 81-83.  Dr. Magdaleno also assessed postural limitations (only frequently climb ramps/stairs, stoop, kneel, crouch, and crawl and only occasionally climb ladders/ropes/scaffolds) and environmental restrictions (avoid concentrated exposure to pulmonary irritants and hazards such as machinery and heights).  Tr. 25-26, 82-83.  State agency reviewing physician James Irwin, M.D., assessed the record on January 20, 2016, and concurred with the limitations found by Dr. Magdaleno.[2]  Tr. 26, 100-102.

Based on the foregoing, the medical record does not align with Plaintiff's allegations of completely disabling physical symptoms in this case.  Consequently, the ALJ's finding that the objective medical evidence of record is inconsistent with Plaintiff's allegations is supported by substantial evidence.

---

[2]The ALJ's RFC determination is only slightly more restrictive than the physical capacity assessment of Dr. Magdaleno.  See Tr. 20.

The ALJ next indicated Plaintiff admitted she had received no medical treatment whatsoever during the 10 months prior to the administrative hearing.  Tr. 23, 42.

An ALJ properly relies upon "'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment'" in assessing a claimant's credibility.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1284); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  "[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."  S.S.R. 16-3p.  Moreover, an "unexplained, or inadequately explained, failure to seek treatment may be the basis for an adverse credibility finding unless one of a 'number of good reasons for not doing so' applies."  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

The ALJ did not thoroughly investigate Plaintiff's rationale for not seeking treatment during the 10 months prior to the administrative hearing.  Nevertheless, although an ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983), the ALJ asked Plaintiff twice about her 10-month break from treatment at the time of the administrative hearing, Tr. 42, and Plaintiff failed to proffer any reasoning or otherwise explain her failure to seek treatment during that 10-month time period.  Moreover, Plaintiff's post-hoc rationalizations[3] do not persuade the Court

---

[3]Plaintiff presently indicates it took her an hour to drive to where therapy was available and being in a car triggered her vertigo and caused back pain.  ECF No. 12 at 8.  However, as discussed in Section A, Plaintiff's assertion that vertigo

that Plaintiff had a justifiable reason for not seeking medical treatment during a 10-month period of time she asserts she was suffering debilitating symptoms.

Plaintiff's lengthy lack of treatment for her alleged symptoms during the relevant time period was a sufficient reason to discount her testimony regarding the severity of her impairments.

The ALJ also noted the record reflects a history of noncompliance with recommended treatment. Tr. 23-24.

Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints. 20 C.F.R. §§ 404.1530, 416.930; *Fair*, 885 F.2d at 603.

The fact that Plaintiff failed to comply with the medical treatment prescribed by her physicians; specifically, noncompliance with the conservative course of treatment through physical therapy that was recommended to her by various physicians, Tr. 333, 340, 347 & 513 (recommending physical therapy); 335 (noting Plaintiff "yet to do any real directed physical therapy or treatment"); 345 & 480 (Plaintiff reporting she was not able to attend any physical therapy due to her remote location, work and childcare obligations); 427 (noting Plaintiff had only engaged in "some minimal physical therapy"); 512 (noting Plaintiff had been discharged from physical therapy because she had attended only her initial evaluation and had cancelled or no showed for her other scheduled appointments), discounts Plaintiff's claim of disabling pain and limitations.

The ALJ additionally suggested Plaintiff was no longer working not due to disabling limitations, but instead because she "ha[d] her hands full taking care of her 3 grandchildren who were under her care." *See* Tr. 25, 456. The inability to

---

was a severe impairment is unavailing, and, as discussed directly above, objective medical evidence failed to substantiate Plaintiff's contention of disabling back pain. *Supra.*

ORDER GRANTING DEFENDANT'S MOTION . . . - 12

work due to nondisability factors is another valid basis for rejecting a claimant's credibility. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (stating that in making a credibility determination, the ALJ did not err by considering that claimant left his job because he was laid off, rather than because he was injured). The ALJ did not err by mentioning this basis (it appeared Plaintiff stopped working for reasons unrelated to her alleged disabling impairments) for discounting Plaintiff's credibility as well.

Finally, the ALJ concluded Plaintiff's daily activities were inconsistent with greater limitations than as assessed by the ALJ. Tr. 24-25.

It is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair*, 885 F.2d at 603. For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that a claimant's activities "contradict claims of a totally debilitating impairment." *See Molina v. Astrue*, 674 F.3d 1104, 1112-1113 (9th Cir. 2012). A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *Molina*, 674 F.3d at 1112-1113 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair*, 885 F.2d at 603)).

///

///

Here, the ALJ specifically identified Plaintiff's ability to raise her three young grandchildren as inconsistent with her alleged inability to engage in any work activity whatsoever. Tr. 24.

The record reflects Plaintiff was significantly active in terms of childcare responsibilities throughout the relevant time period in this matter. *See* Tr. 345 (pre-onset date report that Plaintiff was "quite busy with the full-time care of her grandchildren"); 446 (Plaintiff's report that she is "quite active taking care of her grandchildren including a [toddler] who she continues to pick up frequently"); 456 (Plaintiff's report that she was "no longer working because she 'has her hands full' taking care of her 3 grandchildren who are under her care"); 473 (Plaintiff's report that she had been "mostly preoccupied with the care of her three young grandchildren"); 478 (Plaintiff's report that she is "responsible for her 3 grandchildren whose mother is unable to care for them"); 549 (November 2016 letter by Micaela Godzich, M.D., indicating it was her medical opinion Plaintiff was "fully capable of physically and emotionally providing excellent care for her three grandchildren").

It appears reasonable for the ALJ to have concluded Plaintiff's childcare activities were inconsistent with her allegations of totally disabling symptoms and thus detracted from her overall credibility. *See Smith v. Comm'r Soc. Sec. Admin.*, 611 Fed.Appx. 897, 900 (9th Cir. 2015) (affirming the ALJ's adverse credibility determination and noting the ALJ found the claimant's testimony was contradicted by her own description of helping with the "care of children" and household chores); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (affirming the ALJ's adverse credibility determination and noting the claimant's assertion of disability was undermined by testimony about her daily activities, such as "attending to the needs of her two young children," cooking, and shopping).

///

///

1　　　In any event, even if the Court found the ALJ erred by failing to identify how Plaintiff's activities specifically undermined her subjective complaints, the ALJ, as described above, provided other clear and convincing reasons for discrediting Plaintiff's testimony, rendering any error harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1160, 1163 (9th Cir. 2008) (upholding adverse credibility finding where ALJ provided four reasons to discredit claimant, two of which were invalid); *Batson*, 359 F.3d at 1197 (affirming credibility finding where one of several reasons was unsupported by the record); *Tommasetti*, 533 F.3d at 1038 (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination."). An ALJ's decision will not be reversed for errors that are harmless. *Burch*, 400 F.3d at 679.

　　　The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). After reviewing the record, the Court finds the ALJ provided clear and convincing reasons, which are fully supported by the record, for finding Plaintiff's symptom allegations were not entirely credible in this case. The ALJ did not err in this regard.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision should be affirmed. Therefore, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

///

1   2.   Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

**IT IS SO ORDERED**.  The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED June 15, 2020.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE